**Herschel W. PETERSON and First Midwest Bank, as Executors of the Estate of David Peterson, Plaintiffs–Appellees,**

v.

**SEALED AIR CORPORATION, Defendant–Appellant.**

**No. 89–2127.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 21, 1990.

Decided April 26, 1990.

As Amended on Denial of Rehearing May 21, 1990.

---

Michael J. Martin, Dunn & Martin, Joliet, Ill., for plaintiffs-appellees.

John D. Donlevy, Mitchell D. Raup, Stephen G. Gilles, Diana T. Runcie, Mayer, Brown & Platt, Chicago, Ill., for defendant-appellant.

Before POSNER and EASTERBROOK, Circuit Judges, and MOODY, District Judge.[*]

EASTERBROOK, Circuit Judge.

The district court certified for an interlocutory appeal under 28 U.S.C. § 1292(b) the question whether Illinois would extend the statute of limitations for a person who suffered a traumatic injury out of which diseases later develop. We accepted the appeal. Because an appeal under § 1292(b) brings up the entire case, *Edwardsville National Bank & Trust Co. v. Marion Laboratories, Inc.*, 808 F.2d 648, 650–51

[*] Honorable James T. Moody, of the Northern

(7th Cir.1987), the court requested the parties to address three additional questions that also might be dispositive. One was whether the defendant received timely notice on the assumption that the time runs from the date of the injury. We conclude that defendant did, making it unnecessary to address the question the district court certified or the other questions we posed to the parties.

David Peterson, working at a plant of Republic Packaging Co. in Boston on April 18, 1984, needed a trash receptacle. He decided to make his own by using an acetylene torch to cut the top off a 55 gallon drum. Peterson thought the drum empty; it wasn't, at least not entirely. When the red-hot lid fell to the bottom of the drum, a thick green vapor billowed out. It was polymeric polyphenylene polyisocyanate gas produced from the oxidation of the chemical in the drum. Peterson moved the drum outdoors, inhaling the vapors as he did. Within hours he felt fatigued. The next day he began to cough up blood and flew home to Illinois. By April 20 he was in a hospital's intensive care unit suffering from acute pulmonary edema, complaining that his lungs felt as if they were filled with water. On April 22 he left the hospital against his physician's advice and returned to work the next day.

The worst was yet to come. Republic's company doctor sent Peterson to several physicians, one of whom diagnosed Goodpasture's Syndrome, a rare auto-immune disease. "Auto-immune" diseases are disorders characterized by confusion of the immune system, which mistakes part of the body for an invading organism and tries to kill it. Multiple sclerosis and Guillan–Barre Syndrome are the best-known of these diseases; none is well understood. Goodpasture's Syndrome is the name used when the targets are the kidneys and lungs. Whether the gas caused this condition—as opposed to aggravating or revealing an existing condition—is unknown, perhaps unknowable. In October 1984 the physician prescribed Cytoxan and Predni-

District of Indiana, sitting by designation.

sone for the Goodpasture's Syndrome. These drugs suppress the immune system, which takes care of the immediate problem but increases the risk of infection and other difficulties. By October 1986 the Goodpasture's Syndrome was gone. But Peterson still was not feeling well. Another physician diagnosed cloacogenic cancer. This disease was too much; on April 21, 1988, Peterson died of cancer. He was 30 years old. His oncologist believes that drugs suppressing the immune system can cause cloacogenic carcinoma.

So the argument is that the gas caused or aggravated Goodpasture's Syndrome, the treatment for which caused the cancer that brought about Peterson's death. Peterson recovered workers' compensation from his employer, Republic; he (technically, his estate, although we use his name for simplicity) seeks damages in tort from Sealed Air Corporation, the manufacturer of the substance in the drum, on the theory that the drum bore inadequate warnings of the danger of methyl isocyanate, and particularly the danger of reusing the drum. Whether such a warning would have conveyed anything Peterson did not already know, and if so whether it would have distracted people from more urgent messages, are subjects we need not discuss. See *Cotton v. Buckeye Gas Products Co.*, 840 F.2d 935, 937–38 (D.C.Cir.1988).

The drum contained "Instapak Component A". Peterson filed this suit in an Illinois court on April 18, 1986. Illinois gives two years to sue on account of personal injuries, so if the time runs from the opening of the drum the complaint was filed on the last possible day. Just as it is careless (at best) to cut the top off a drum of chemicals with an acetylene torch—for who knows what can go wrong?—it is playing with fire to file a suit on the last day. All sorts of things can go wrong. Did go wrong. The complaint named as defendant "Instapak Corporation". INSTAPAK is a trademark, not the name of the manufacturer of the chemicals or the designer of the warning label. Sealed Air Corporation, a Delaware firm, made and packed the "Instapak Component A". Inspection of the drum (or any similar drum) would have

revealed this. Sealed Air formed an "Instapak Corporation" as a subsidiary to hold and license the INSTAPAK trademark; it is a shell and had nothing to do with the conduct set out in the complaint. After Instapak Corporation removed the suit to federal court on account of diversity, Peterson amended the complaint to name Sealed Air as defendant; Sealed Air moved to dismiss on account of the statute of limitations.

The parties assume that Illinois law supplies the statute of limitations, even though the inhalation occurred in Massachusetts and none of Sealed Air's conduct took place in Illinois. Whatever we might have thought of the subject given Illinois' borrowing statute, Ill.Rev.Stat. ch. 110 ¶ 13–210, we shall accept the parties' silence as dispositive. The parties expressly agree that Fed.R.Civ.P. 15(c) governs the question whether the addition of Sealed Air as a party "relates back" to the filing of the complaint. This, too, is problematic. Although there is a solid argument that Rule 15(c) applies to diversity cases despite *Walker v. Armco Steel Corp.*, 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980), see Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 6A *Federal Practice and Procedure* § 1503 (2d ed. 1990), Peterson's complaint was not filed in federal court. Application of Rule 15(c) to determine the sufficiency of service when the case was pending in state court would raise substantial questions under the Rules Enabling Act and the Rules of Decision Act. Nonetheless, the parties' agreement that Rule 15(c) governs—perhaps prompted by their shared belief that Illinois law comes to the same thing, although phrased differently, Ill.Rev.Stat. ch. 110 ¶ 2–616(d)—removes the question from the litigation.

The district court approached the issues in stages. First it concluded that Instapak Corporation had nothing to do with Peterson's injury and must be dismissed. 1987 WL 10973, 1987 U.S. Dist. LEXIS 3986 (N.D. Ill.). The court also concluded that Rule 15(c) does not allow relation back and dismissed the suit against Sealed Air without prejudice, leaving open the possibility that

Peterson could establish some event tolling the statute. Peterson filed anew, and the court granted Sealed Air's motion for summary judgment. 1988 WL 10726, 1988 U.S. Dist. LEXIS 1046. Under Illinois law, a traumatic injury starts the statute of limitations running, even though some of the consequences of the injury may not be apparent immediately. *Nolan v. Johns-Manville Asbestos*, 85 Ill.2d 161, 52 Ill.Dec. 1, 421 N.E.2d 864 (1981); *Lofton v. General Motors Corp.*, 694 F.2d 514 (7th Cir.1982) (Illinois law). Because Peterson felt some symptoms within hours, and within two days was in intensive care, the court concluded that his injury was traumatic. On motion under Fed.R.Civ.P. 59(e), however, the court changed its mind. In the third opinion, 690 F.Supp. 697 (1988), the court concluded that Illinois would recognize two claims: one on account of the immediate pulmonary edema and its sequelae, including Goodpasture's Syndrome, accrued on April 18, 1984, and a second on account of the cancer. This latter claim, the court held, accrued only when both the disease and its cause were discovered, sometime in the fall of 1986. The court therefore reinstated the case to the extent the complaint seeks damages for wrongful death but reiterated that damages attributable to the initial symptoms and Goodpasture's Syndrome are unavailable. It certified a question for interlocutory appeal, 1989 WL 26843, 1989 U.S.Dist. LEXIS 2766, bringing the case here. Our path is more direct, as we conclude that the addition of Sealed Air relates back under Rule 15(c).

Peterson miraculously obtained service of process on the date he filed the complaint. Miraculous not only because service rarely occurs on the date of filing but also because Instapak Corporation has an agent in Illinois for service of process, even though it does no business in Illinois. The agent is the Illinois branch of C.T. Corporation, a nationwide firm specializing in service of process, franchise fees, and the hundred other details that any corporation must look after in states where it has no offices. C.T. was Instapak's agent for service of process because it serves Sealed Air and all of its subsidiaries. So wholly by accident the complaint naming Instapak as defendant landed in the lap of Sealed Air's registered agent for service of process, two years to the day after Peterson put torch to drum.

C.T. recognized that Sealed Air rather than Instapak is the proper defendant and sent a copy of the complaint and summons to Sealed Air's corporate headquarters in New Jersey. Robert Grace, Sealed Air's General Counsel, received the papers on April 23, five days after they had been served by hand in Chicago. (April 18, 1986, was a Friday, so it is likely that C.T. dispatched the papers on Monday, April 21.) Sealed Air contended that April 23 was its first notice of the suit. "Notice" is the key word in Rule 15(c), which provides in part:

> An amendment changing the party against whom a claim is asserted relates back if ... within the period provided by law for commencing the action against the party to be brought in by amendment that party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

*Schiavone v. Fortune*, 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986), holds that the "period provided by law" refers to the statute of limitations rather than the date of the complaint plus the 120 days Fed.R. Civ.P. 4(j) allows to accomplish service of process. So although the defendant named in a complaint may be ignorant of the suit until after the period of limitations has run, without jeopardizing the plaintiff's case, relation back is possible under the current version of Rule 15(c) only if the party to be added has "received ... notice" before the expiration of the statute of limitations— which we assume is April 18, 1986. (The Advisory Committee on Civil Rules has proposed an amendment to Rule 15(c) that will extend the time for notice to the maximum allowed by Rule 4(j) for service, 127 F.R.D. 237, 310–11 (1989).)

Sealed Air argued, and the district court held, that it "received ... notice" of the suit on April 23, when the papers reached its headquarters. This assumes that the date its agent received the papers in Chicago is irrelevant. At oral argument counsel for Sealed Air insisted that *Schiavone* requires this disjunction, but it does not. That suit naming "Fortune" (a trademark) as defendant was filed on May 9, 1983, and the period of limitations expired on May 19. The complaint and summons were mailed on May 20 and received on May 23 by the registered agent of Time Incorporated, the proper defendant. Treating the agent's knowledge as notice to Time would have done plaintiff no good. Its sole resource lay in the argument that it had 120 days after filing suit to bring in the proper defendant, an argument the Court rejected. *Schiavone* neither needed to nor did decide when a corporation "receive[s] ... notice" for purposes of Rule 15(c)(1).

That question is, we believe, one of state law under *Erie* and *Walker*, because the federal rules do not say who acts for a corporate defendant. Corporations receive notice and have knowledge only through real persons. *Which* natural persons are "the corporation" for a particular purpose is presumptively a question of state law. The Rules of Civil Procedure could specify the right persons, and to an extent they do. Rule 4(d)(3) says who is to receive service of process on behalf of a corporation. Procedures specified by the Rules of Civil Procedure prevail over inconsistent requirements of state law. *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 26–27 & n. 4, 108 S.Ct. 2239, 2242 & n. 4, 101 L.Ed.2d 22 (1988); *Lewellen v. Morley*, 875 F.2d 118, 121–22 (7th Cir.1989). But nothing in Rule 15 describes which agents' knowledge counts.

Sealed Air believes that a corporation "receive[s] ... notice" only when one of its senior employees obtains knowledge. An agent for service of process is insufficient, Sealed Air believes, because the agent is an independent contractor for many firms rather than an employee of Sealed Air and does not occupy a responsible position in the corporate hierarchy. So far as we can tell, however, no state's law draws such a line between employees and other agents, or between high-level employees and others. Usually *any* agent's knowledge is attributed instantly to the corporation, so long as the agent has actual authority on the question. "A person has notice of a fact if his agent has knowledge of the fact ... under circumstances coming within the rules applying to the liability of a principal because of notice to his agent," *Restatement (2d) of Agency* § 9(3) (1958). The more particular "rules applying to the liability of a principal because of notice to his agent" say that unless the person giving notice knows that the agent has an interest adverse to the principal's, "a notification given to an agent is notice to the principal if it is given ... to an agent authorized to conduct a transaction, with respect to matters connected with it as to which notice is usually given to such an agent", *id.* at § 268(1)(c). That fairly describes notice about a lawsuit given to a registered agent for service of process.

If Peterson's complaint had named Sealed Air Corporation as the defendant, and the papers had been delivered to C.T. Corporation on April 18, 1986, that delivery would be notice to Sealed Air. It could not say that the clock continued running until the papers reached New Jersey five days later. Not only Fed.R.Civ.P. 4(d)(3) but also the corporate laws of all 50 states stop the clock when the registered agent receives process. See American Bar Ass'n, 1 *Model Business Corporation Act Ann.* 296–302 (3d ed. 1989) (collecting statutes and illustrative cases). Sealed Air is a Delaware corporation, and Delaware's statutes, 8 Del.Code § 321 and 10 Del.Code § 3111, are not as explicit on the question as are the laws of states that have adopted the Model Business Corporation Act. Delaware's case law leaves nothing to the imagination, however. *Penn Central Light & Power Co. v. Central Eastern Power Co.*, 171 A. 332 (Del.1934), concludes that service on a registered agent is no different from service in hand to the president of the corporation. See also, e.g., *Kolyba Corp.*

*v. Banque Nationale De Paris,* 316 A.2d 585 (Del.Ch.1973).

Treating notice to the registered agent as sufficient is not constructive (which is to say, no) notice. The agent has *actual* notice. Because corporations are nothing but bundles of agency relations, there is no other person to whom the "real" notice comes after an agent gets notice. When a firm appoints someone (here, some other corporation) to be its agent for service of process, it is saying that this is the person whose knowledge counts. Under Rule 4(d)(3) and parallel provisions of state law, service on the president or general counsel of a corporation would be effective notwithstanding the designation of a special agent for service. So too a corporation might "receive[ ] ... notice" within the meaning of Rule 15(c) if its president reads about the suit in *The Wall Street Journal* and recognizes that his firm is the right defendant. Exotica need not detain us, however. Notice to the special agent—a person having both apparent and actual authority to receive "notice" on behalf of the corporation—is always enough.

This does not mean that a complaint about a defective automobile naming as defendant General Motors allows the plaintiff to substitute Ford just because the two happen to share an agent for service of process. Rule 15(c)(1) requires notice; Rule 15(c)(2) adds that relation back is not possible unless within the period of limitations the person to be added "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party". A firm could have notice (Rule 15(c)(1)) without recognizing that it was the right party (Rule 15(c)(2)). A complaint naming GM that went on and on about the plaintiff's Thunderbird would alert Ford's agent that Ford was the right party; a complaint mentioning a Corvette would not. There can be no serious question in our case under Rule 15(c)(2): Instapak Corporation is a wholly-owned, non-operating subsidiary of Sealed Air, so the complaint could have been meant for no one else.

In the end, our case does not differ from a misnomer—a complaint naming, say, "Sealed Air Incorporated" served on the last day of the limitations period. Plaintiff could swap "Corporation" for "Incorporated" without hindrance from the rules. *Dandrea v. Malsbary Mfg. Co.,* 839 F.2d 163 (3d Cir.1988). Wright, Miller & Kane, *Federal Practice and Procedure* § 1498 at 134–36. We hold that a corporation "receive[s] ... notice" within the meaning of Rule 15(c)(1) no later than the date its registered agent for service of process receives the complaint, even though the complaint does not identify that corporation as a party. In light of this, we bypass (as the Supreme Court did in *Schiavone,* 477 U.S. at 28–29, 106 S.Ct. at 2383–84) the question whether Rule 15(c) authorizes relation back, despite the absence of timely notice, when the original defendant is identical in interest to the proper one. It is unnecessary to decide whether Illinois would distinguish Peterson's cancer from his other ailments, for the complaint is timely with respect to all.

AFFIRMED AND REMANDED

### ORDER

The opinion issued in this case is amended by deleting the language at page 1233: "methyl isocyanate gas (the same stuff that killed so many people in Bophal, India)" and inserting in its stead "polymeric polyphenylene polyisocyanate gas".*

Sealed Air's petition for rehearing contends that our decision conflicts with *In re Allbrand Appliance & Television Co.,* 875 F.2d 1021 (2d Cir.1989), which holds that notice to a subsidiary does not give notice to the parent corporation for purposes of Rule 15(c). *Allbrand Appliance* is based on the principle that the corporate form must be respected. Corporations are not agents of their stockholders (their "parents"). Nothing in our opinion calls this principle into question. The notice in this case came to C.T. Corporation, which unlike

---

* Editors Note: Change ordered has been incorporated into the opinion.

a subsidiary was unquestionably Sealed Air's agent for the purpose of receiving process. The decisions do not conflict.

All of the judges on the panel have voted to deny the petition for rehearing, which is accordingly denied.