**Eufremia SURTI, Plaintiff,**

v.

**G.D. SEARLE & CO., Defendant.**

No. 95 C 5204.

United States District Court,
N.D. Illinois,
Eastern Division.

July 29, 1996.

982

Kevin Barry Rogers, Kevin Rogers & Associates, Chicago, IL, for plaintiff.

Jeffrey Kenneth Ross, Stephanie L. Perl, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Plaintiff Eufremia Surti brings this action against defendant G.D. Searle & Company, claiming that Searle discriminated against her on the basis of her age and national origin in violation of the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621 *et seq.*, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, by failing to promote her to the position of Cash Accountant in 1994. Presently before the Court is Searle's motion for summary judgment in its favor.

### RELEVANT FACTS

The following facts are gleaned from the statements of material facts and accompanying exhibits, and the responses thereto, submitted by the parties pursuant to Rule 12(M) and 12(N) of the Local General Rules of the United States District Court for the Northern District of Illinois. They are undisputed unless otherwise noted.[1]

Surti was born in the Republic of the Philippines, and is of Filipino national origin. She was hired by Searle in 1986, at the age of 43. The next year, after a one-month layoff because of a job elimination, she was re-hired by Searle as an accounting clerk in the accounting department.

In a March 1988 performance appraisal, Surti's then supervisor Patty Cicero wrote that Surti "needs to concentrate on improving her communication skills," and that she should consider taking a "communication/speaking course, Toastmasters." On Surti's January 1990 performance review, her then supervisor Terri Ostberg identified "Improve communication skills" as a developmental need, and discussed this recommendation with Surti. In October 1988, January 1989 and May 1992, Surti applied for openings as a Cash Accountant, and was denied the position each time. In April 1990, Surti

1. Surti launches a volley of evidentiary objections to much of the supporting material filed with Searle's motion. Many of the objections relate to her argument that deposition excerpts may not be used to support motions for summary judgment, especially if they are used to support the motion itself (or the Local Rule 12 statements of fact) rather than to support an accompanying affidavit. This argument borders on the frivolous.' Subsection (c) of Rule 56 expressly permits the use of depositions as evidence in summary judgment determinations, with or without accompanying affidavits: "The judgment sought shall be rendered forthwith if the pleadings, *depositions*, answers to interrogatories, and admissions on file, together with the affidavits, *if any*, show that there is no genuine issue as to any material fact...." FED.R.CIV.P. 56(c). *See also Pender v. United States*, No. 4:93–cv–66RP, 1995 WL 358822 at *3–4 (N.D.Ind. 5/26/95) (discussing this issue in detail and citing *Scholes v. African Enterprise, Inc.*, 854 F.Supp. 1315, 1324 (N.D.Ill.1994) and *Peterson v. Instapak Corp.*, 690 F.Supp. 697, 700 n. 4 (N.D.Ill.1988), *aff'd on other grounds*, 902 F.2d 1232 (7th Cir.1990)). Subsections (a) and (b) of Rule 56 makes it clear that the moving party need not submit affidavits with a motion for summary judgment: "A party against whom a claim ... is asserted ... may ... move *with or without supporting affidavits* for a summary judgment in the party's favor...." FED.R.CIV.P. 56(b).

Other of Surti's evidentiary objections, such as some of those claiming that certain testimony is hearsay, have more merit. Where we agree that the testimony cited to support a proffered fact is inadmissible hearsay, we have omitted the fact from this narrative as being unsupported.

applied unsuccessfully for an opening as a senior financial clerk. None of these applications are at issue in this case, and there is no evidence in the record as to the reasons for any of these denials. In June 1993, Surti was promoted to the position of Senior Accounting Coordinator. In her current position, Surti communicates over the telephone with persons at Monsanto, Searle's parent company.

In May 1994, the Cash Accountant position in the accounting department became vacant, and Searle posted the job opening. The "Qualifications" section of the posting stated:

> **Required:** Undergraduate degree in accounting. 1–2 years previous cash and general ledger experience. Experience with computer systems, such as Lotus 123 and WordPerfect, general ledger software.

The posting also referred readers to the Position Description for the position. Neither the job posting nor the Position Description listed good oral communications skills as "Required" or "Desired" for the job. The Position Description listed as a "major responsibility" of the position, "Work directly with Monsanto's Treasury Department, as well as Searle's Treasury Department when dealing with all cash related functions for all entities."

There were four applicants for the position: Surti, who was of Filipino national origin and then 50 years old; Vanessa Lay, an African–American woman who was under 40; Katharine Koskinas, a non-minority woman in her 20s; and Elizabeth Wagner, a nonminority woman who was under 40. Surti and Lay were both accounting clerks with Searle; Koskinas worked for Lorex Pharmaceuticals, a company with which Searle was engaged in a joint venture; and Wagner was a contract employee with Searle.

The decision makers for the initial screening of candidates were David Strube, Manager, Corporate Accounting, and Tom Kneller, Strube's direct supervisor. Some time after the job was posted, Kneller and Strube got together and drew up a list of qualifications for the position to be used during the interviewing process, entitled "Cash Accountant Factors." No similar list had been used in filling the Cash Accountant position in the past. The list included some skills identified in the Qualifications sections of the job posting and Position Description (e.g., undergraduate degree in accounting, Lotus 1–2–3 skills), and some which were not (e.g., "promotability"). One of the factors on the list they drew up that was not on the other forms was: "Good oral communication skills (contact w/St. Louis [Monsanto], Treasury, Payroll, A/P, others)." The Cash Accountant position required spending from 10% to 25% of the day on the telephone.

All four candidates for the position were interviewed by Kneller, Strube, Human Resources Manager Donna Holley and Brian Cunningham, the Director of Financial Management and Reporting, who was Kneller's supervisor. Kneller made notes after the interviews of at least Surti and Lay. His notes on Surti comment, "*Communication —* tends to not answer question; difficult to understand at times." Kneller and Strube discussed the candidates after the interviews and decided not to pass Surti or Lay on to the next level of consideration for the position. The position was ultimately given to Koskinas. On June 24, 1994, Surti's application for the position was marked by Holley to indicate that Surti's qualifications met the basic job requirements for the Cash Accountant position, but that the "[c]andidate selected had superior communication skills." Koskinas had less seniority at Searle and less accounting experience than Surti.

Both Kneller and Strube testified that, outside of the interview itself, they had had difficulty in understanding Surti on at least one occasion in the past, although they had trouble describing the problems they had encountered with specificity. Kneller testified that on occasion Surti's tone of voice would get higher and faster if she were excited, and that she had what he believed to be a Filipino accent. Strube testified that he could not understand Surti "[h]alf the time." Kneller nevertheless testified that he had no recollection of Surti ever miscommunicating information from her department to others, and he believed her communications skills were adequate for the job she was holding.

Surti's direct supervisor from April 1990 to December 1993, Emily Matz, testified that she was generally familiar with the duties and responsibilities of the Cash Accountant position, and that in her opinion Surti was able to perform them. Matz never had difficulty understanding Surti, and Surti's failure to get the promotion to Cash Accountant was inconsistent with Matz's feeling about her abilities, including her communication abilities.

On May 25, 1994, Kneller, Holley, Cunningham, Judy Garnett, the Searle Director of Human Resources, and Jack Smith, the Manager of the General Accounting Services department, met to discuss "how best to address the promotional aspirations" of Surti and Lay. They decided to upgrade Surti's and Lay's positions and pay, and to give them additional responsibilities. At Smith's direction, a position upgrade was prepared for Surti to an "Accounting Operations Associate" position.[2] At the same time, Searle offered Surti training in communications, which she rejected.

The Position Description for the accounting operations position listed the likely internal "interfaces" for the position as, "Accounting Operations department, Fixed Asset Accounting staff, Accounts Payable, Payroll, Human Resources," and the external interfaces as, "Internal auditors from Monsanto and external auditors." The qualifications section specifically included "Good oral and written communication skills" as "Required" skills. Smith and Kneller considered Surti to be qualified to fill this position.

On May 27, 1994, Surti filed an EEOC charge claiming discrimination in the failure to promote her to the Cash Accountant position. Thereafter, apparently worried that accepting the Accounting Operations Associate position could compromise her EEOC charge, Surti turned the new position down.

## SUMMARY JUDGMENT STANDARDS

■ Summary judgment is proper only if the record shows that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). In determining whether a genuine issue exists, the court "must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). The nonmovant must "make a showing sufficient to establish the existence of [the] element[s] essential to that party's case, and on which that party will bear the burden of proof at trial" in order to withstand a motion for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ When determining whether factual issues exist, the court must view all evidence in the light most favorable to the nonmoving party, and draw all inferences in the nonmovant's favor. *Wolf v. Buss*, 77 F.3d 914, 918 (7th Cir.1996); *Taylor v. Canteen Corp.*, 69 F.3d 773, 779 (7th Cir.1995). In an employment discrimination case, "summary judgment is improper if the plaintiff offers evidence from which an inference of ... discrimination may be drawn." *Fuka v. Thomson Consumer Elec.*, 82 F.3d 1397, 1402–03 (7th Cir.1996) (citations omitted). However, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In making its determination, the court's sole function is to determine whether sufficient evidence exists to support a verdict in the nonmovant's favor. Credibility determinations and the weighing of evidence are jury functions, not those of a judge when deciding a motion for summary judgment. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. In an employment discrimination suit, where credibility and intent are pivotal issues, these standards apply with added rigor. *Courtney*

---

**2.** Although the parties differ on these points, it appears that the accounting operations position was a non-exempt position with a starting salary lower than the salary for the Cash Accountant position. The Cash Accountant position was an exempt position. The practical significance of the designation "exempt" or "non-exempt" on management status is unclear in this case.

*v. Biosound, Inc.,* 42 F.3d 414, 418 (7th Cir. 1994).

## ANALYSIS

■ In any discrimination case, the plaintiff bears the ultimate burden of proving, by a preponderance of the evidence, that her employment was adversely affected by her protected class status. The plaintiff can meet this burden by presenting either direct or circumstantial evidence of discriminatory intent. *Troupe v. May Dep't Stores Co.,* 20 F.3d 734, 736 (7th Cir.1994). The most common method of proving employment discrimination circumstantially, and the approach taken by Surti, is the indirect, burden-shifting approach articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973).[3]

■ To state a prima facie case of discrimination under the *McDonnell Douglas* method, Surti must establish that (1) she is within a protected class; (2) she was meeting the legitimate expectations of her employer; (3) she suffered an adverse employment action; and (4) similarly situated employees not in the protected class were treated more favorably. *Iovin v. Northwestern Memorial Hosp.,* 916 F.Supp. 1395, 1405 (N.D.Ill.1996) (national origin discrimination); *Sirvidas v. Commonwealth Edison Co.,* 60 F.3d 375, 377 (7th Cir.1995) (age discrimination).

■ Once a plaintiff succeeds in making a prima facie showing of discrimination, a rebuttable presumption of discrimination arises and the burden of production shifts to the defendant employer to articulate a legitimate nondiscriminatory justification for its action. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). To meet this burden, the defendant must produce evidence "which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 509, 113

S.Ct. 2742, 2748, 125 L.Ed.2d 407 (1993) (emphasis omitted). If the defendant meets its burden of production, the presumption of discrimination dissolves and the burden of production shifts back to the plaintiff to show that the proffered reason is a pretext for discrimination. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

■ Pretext may be established by showing that a discriminatory intent more likely motivated the employer or that "the employer's proffered explanation is unworthy of credence," *id.,* because the employer's explanation had no basis in fact, was not the "real reason" for the adverse action, or was insufficient to warrant the adverse action. *Collier v. Budd Co.,* 66 F.3d 886, 892 (7th Cir.1995). In practical terms, the plaintiff must raise a genuine question as to the credibility of the employer's proffered explanation for the adverse action, or "specifically refute the facts which allegedly support the employer's claim." *Sirvidas,* 60 F.3d at 378. At all times the plaintiff retains the ultimate burden of persuasion that she was the victim of intentional discrimination. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

■ Searle argues in its motion that Surti cannot establish a prima facie case because she cannot show either that she was qualified for the position (the second element) or that the person given the position had similar or lesser qualifications (the fourth element). Searle also argues that Surti cannot show that its proffered nondiscriminatory reason for not promoting her—that she lacked the necessary oral communication skills—is merely a pretext for discrimination. Searle's argument as to the second element is foreclosed by the admission of Holley, its Human Resources Manager, that Surti had the necessary qualifications for the Cash Accountant position. *See* Pl.'s Resp.Ex. H (Surti application for Cash Accountant position marked by Holley to indicate that "Your qualifications meet basic job requirements"). At the very

---

**3.** Other methods of proving discrimination circumstantially may include (1) evidence of "suspicious timing, ambiguous statements oral or written, behavior towards or comments directed at other employees in the protected group, and other bits and pieces from which an inference of

discriminatory intent might be drawn;" and (2) evidence "whether or not rigorously statistical, that employees similarly situated to the plaintiff ... received systematically better treatment." *Troupe,* 20 F.3d at 736.

least, this admission must be considered to raise a question of fact for the jury to resolve.

As to the fourth element, Searle argues that the person selected for the position, Katharine Koskinas, was judged to have superior communication skills, and hence Surti was not equally or better qualified for the job than Koskinas. *See id.* (noting that "Candidate selected had superior communication skills"). Surti attempts to dispute this evaluation with testimony from Matz and others indicating that her communication skills were sufficient for the job. This evidence is not sufficient, as it does not show that Surti and Koskinas were similarly situated with respect to communication skills. However, Surti proffers undisputed evidence that she had greater work experience in accounting, as well as greater familiarity with Searle's accounting department: Koskinas had not been employed by Searle before being hired into the Cash Accountant position. Accounting experience and experience with Searle's general ledger software were stated qualifications for the Cash Accountant position; superior oral communication skills were not. Of course, Searle was entitled to make its ultimate decision on factors not explicitly stated in its job description and posting, but this argument relates to the pretext issue, rather than to the question of whether Surti was similarly situated to Koskinas under Searle's stated job requirements. Drawing the inferences in Surti's favor, as we must on a motion for summary judgment, Surti's evidence creates a genuine factual dispute over whether she was, overall, equally or better qualified to perform the job than the successful candidate.

Thus, we turn to the question of whether Surti has raised a triable issue of fact as to the pretextual nature of Searle's sole proffered explanation for not promoting her—that she had "verbal communication problems," specifically, an "inability to speak clearly and communicate information effectively." Def.'s Mot. for Summ.J. at 1. Here, we find that the evidence is conflicting, and thus we must deny Searle's motion for summary judgment. Two pieces of evidence compel this conclusion: the admission by

Holley that Surti's qualifications met "basic job requirements," indicating that the claimed communication problems did not disqualify Surti from the job, and the fact that Searle offered Surti another position that explicitly required good oral communication skills (the Accounting Operations Associate position) almost immediately after turning her down for the Cash Accountant position.

This latter evidence is particularly strong; not only does the Accounting Operations Associate Position Description list "Good oral and written communication skills" as "Required" skills, but it also lists a formidable array of "Principal Interfaces," persons or areas "with whom this position interacts," including the Accounting Operations department, Fixed Asset Accounting staff, Accounts Payable, Payroll, Human Resources, internal auditors from Monsanto and external auditors. Many of these "interfaces" are the same as the ones identified by Kneller and Strube on the Cash Accountant Factors listing for communication skills, which included "St. Louis [Monsanto], Treasury, Payroll, A/P, others."

Searle briefly argues that Surti's "qualification for the 'good oral communication skills' necessary for [the Accounting Operations Associate position] did not mean that she had the oral communication skills for the cash accountant position." Searle does not elaborate on this statement, however, and presents no evidence that the communications demands of these two positions were in fact different, or how they were different. Searle's argument is also weakened by the fact that oral communication skills evidently were not crucial enough to the Cash Accountant position to be listed as either a "Required" or "Desired" skill on the job posting or the Position Description. We therefore find that Surti has adequately called into question the genuineness of Searle's stated reason for not promoting her to the Cash Accountant position, and raised an issue that must be resolved at trial.

Furthermore, the Court is extremely mindful of the fact that an evaluation of a person's communication skills is an inherently subjective determination. (Indeed, the conflicting evaluations of Surti's oral commu-

nication skills by different Searle managers demonstrate this.) In arriving at our conclusions, we found relevant the Ninth Circuit's admonition in *Fragante v. Honolulu,* 888 F.2d 591, 596 (9th Cir.1989), *cert. denied,* 494 U.S. 1081, 110 S.Ct. 1811, 108 L.Ed.2d 942 (1990):

> Accent and national origin are obviously inextricably intertwined in many cases. It would therefore be an easy refuge in this context for an employer unlawfully discriminating against someone based on national origin to state falsely that it was not the person's national origin that caused the employment or promotion problem, but the candidate's inability to measure up to the communications skills demanded by the job. We encourage a very searching look by district courts at such a claim.

Thus, if the evidence adduced at trial suggests that the argument that Surti did not have adequate communication skills is merely a code for references to Surti's Filipino accent, Searle's asserted "legitimate, nondiscriminatory reason" for not promoting Surti may not qualify as nondiscriminatory in actuality. *See Carino v. University of Oklahoma Bd. of Regents,* 750 F.2d 815, 819 (10th Cir. 1984) ("A foreign accent that does not interfere with a Title VII claimant's ability to perform duties of the position he has been denied is not a legitimate justification for adverse employment decisions"); Mari J. Matsuda, *Voices of America: Accent, Antidiscrimination Law, and a Jurisprudence for the Last Reconstruction,* 100 Yale L.J. 1329, 1352 (1991) ("A major complicating factor in applying Title VII to accent cases is the difficulty in sorting out accents that actually impede job performance from accents that are simply different from some preferred norm imposed, whether consciously or subconsciously, by the employer."). Of course, we do not suggest that Searle's actions were in fact based upon Surti's perceived accent, or that the claimed communication problems, however they are described, served as a cover for discrimination. We merely point out that the resolution of this case may involve a determination of whether accent as opposed to other communication difficulties led to Surti's non-promotion, an issue that is clearly beyond the scope of a court's decision-making powers in the context of a motion for summary judgment.

For all of the foregoing reasons, we find that Surti's evidence is sufficient to create a genuine issue of material fact as to Searle's proffered reason for not promoting her, and that a rational factfinder could find that the proffered reason is a pretext for discrimination on the basis of national origin.[4] We therefore deny Searle's motion for summary judgment in its favor. The parties shall appear in court on August 16, 1996 at 9:00 a.m. for the express purpose of setting a firm date for the trial of this matter.

---

4. With respect to Surti's ADEA claim (Count I), it is unfortunate that the parties did not brief its viability separately. While the Court could easily conclude that Surti has met her burden to make a prima facie case on this claim, the plaintiff has not identified any evidence in the record to rebut Searle's argument that its decision was made on factors other than age. Our conclusion that Surti has raised an issue as to whether her oral communications skills were a pretext for national origin discrimination does not necessarily compel or support a conclusion that the proffered reason was a pretext for age discrimination.

Out of an abundance of caution, however, because neither party focused the ADEA claim directly, we will not grant summary judgment in Searle's favor on Count I. Nevertheless, Surti is advised to carefully consider the merits of dropping the ADEA claim before trial in order to focus more clearly on her Title VII claim. To the extent that Searle moved for summary judgment as to Count I, the motion is denied without prejudice to renewal through a motion at the close of the plaintiff's case in chief.