**Frankie McCONNELL and United States Equal Employment Opportunity Commission, Plaintiffs,**

v.

**THOMSON NEWSPAPERS, INC., et al., Defendants.**

**Nos. 2:92CV22, 2:92CV28.**

United States District Court, E.D. Texas, Marshall Division.

Aug. 11, 1992.

Jeffrey Charles Bannon, Katherine Elizabeth Bissell, Tod J. Barrett, E.E.O.C., Dallas Dist. Office, Dallas, Tex., for plaintiff E.E.O.C.

Dean Allen Searle, Marshall, Tex., James A. Rydzel, James O. Perrin, Jones Day Reaves Pogue, Cleveland, Ohio, for defendants.

Richard M. Anderson, Marshall, Tex., for plaintiff Frankie McConnell.

Dean Allen Searle, Marshall, Tex., James A. Rydzel, Jones Day Reaves Pogue, Cleveland, Ohio, for defendants.

## MEMORANDUM OPINION

JUSTICE, District Judge.

### I. *Factual Background and Procedural History of These Actions*

Plaintiff Frankie McConnell worked full-time as chief photographer for the *Marshall News Messenger*, until he was discharged on January 2, 1990, at age fifty. He had worked for the *Marshall News Messenger* since March 24, 1986. McConnell previously had been employed by the paper from 1972–1978, and for about two years in the early 1980's. In January 1990, the *News Messenger* eliminated the job of chief photographer. The paper hired Mark Dimmett, then age thirty, within days after discharging McConnell, in a position classified as "Reporter/Photographer". Whether Dimmett's duties were different from McConnell's is disputed.

McConnell filed, on March 28, 1990,[1] a timely charge of age discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a determination on September 27, 1991, that there was reasonable cause to believe that McConnell had been a victim of age discrimination. On October

---

1. A charge must be filed within one hundred eighty days of the alleged, unlawful practice. 29 U.S.C. § 626(d)(1).

22, 1991, the EEOC contacted the industrial relations consultant of defendant Thomson Newspapers Inc. ("Thomson") to make an attempt to eliminate any discriminatory practices by voluntary compliance with the laws against age discrimination in employment. After several exchanges of correspondence, on February 12, 1992, the EEOC pronounced the efforts at voluntary compliance to have failed.

On January 2, 1992, plaintiff McConnell filed his original petition in the District County of Harrison County, 71st Judicial District of Texas, against defendants Thomson, Lincoln Publishing, Inc. ("Lincoln") and the *Marshall News Messenger.* He alleged a violation of the Age Discrimination in Employment Act of 1967 ("ADEA") (codified as amended at 29 U.S.C. § 621, *et seq.* (1992)), and willful violations of the Fair Labor Standards Act of 1938 ("FLSA") (codified as amended at 29 U.S.C. § 201, *et seq.* (1992)). McConnell sought lost wages and benefits; reinstatement; overtime compensation in the amount of $6,830; liquidated damages equal to any unpaid overtime compensation recovered; and attorney's fees.

On January 3, 1992, McConnell filed his first amended petition, adding defendant Lincoln Publishing (West Virginia) Inc. ("Lincoln WV").[2] Defendant Thomson removed the action to the United States District Court for the Eastern District of Texas, on February 14, 1992, in accordance with 28 U.S.C. §§ 1441 and 1446, alleging federal question jurisdiction under 28 U.S.C. § 1331. Defendants filed an answer to McConnell's allegations on the same date. Defendants admitted that Lincoln WV was an "employer" for the purposes of the FLSA and ADEA,[3] and that it was engaged in interstate commerce within the meaning of the statutes.[4] Plaintiff McConnell did not serve a jury demand within the requisite ten day-period established by Fed. R.Civ.P. 81(c).

On March 6, 1992, plaintiff EEOC filed an action in the United States District Court for the Eastern District of Texas, on behalf of McConnell, against defendant Thomson, alleging a willful violation of the ADEA.[5] The EEOC demanded a permanent injunction against Thomson's engaging in any employment practices that discriminate because of age; an order mandating defendant to institute practices and programs providing equal employment opportunities to those individuals at least forty years of age; a judgment requiring defendant to pay McConnell appropriate back wages, liquidated damages, and prejudgment interest;[6] make-whole relief for all individuals adversely affected by defenders unlawful practices; and costs. Plaintiff EEOC demanded a jury trial on all questions of fact. Defendant answered on April 1, 1992, denying nearly all of the EEOC's allegations.

On May 27, 1992, pursuant to Fed. R.Civ.P. 42(a), the EEOC filed a motion to consolidate its action (No. 2:92cv28) with McConnell's private action (No. 2:92cv22) for trial. This motion was granted on June 30, 1992. On July 21, 1992, the EEOC was granted leave to amend its complaint to add defendant Lincoln WV,[7] and the first

2. Apparently, Lincoln WV owns the *Marshall News Messenger.* Lincoln WV is owned by defendant Lincoln, which is, in turn, owned by TN Holding Corp. TN Holding Corp. also owns Thomson.

3. 29 U.S.C. § 203(d).

4. 29 U.S.C. § 203(b).

5. The filing of an EEOC suit under 29 U.S.C. § 626(b) does not terminate a civil action already filed by a private party under 29 U.S.C. § 626(c)(1). *EEOC v. Wackenhut Corp.,* 939 F.2d 241, 242–44 (5th Cir.1991) (concluding 29 U.S.C. § 626(c)(2) merely precluded filing of

individual suit after the filing of the EEOC action).

6. In the Fifth Circuit, liquidated damages and prejudgment interest cannot both be awarded. *Burns v. Texas City Refining Inc.,* 890 F.2d 747, 752 (5th Cir.1989).

7. Defendant Thomson did not oppose this motion. It did request that it be dismissed from Civil Action No. 2:92cv28. Thomson argued, however, that the EEOC's claims against defendant Lincoln WV were untimely. Under Fed. R.Civ.P. 15(c), EEOC's amendment adding defendant Lincoln WV relates back to the date of its original complaint, March 6, 1992, and its claims against Lincoln WV are thus timely. See p. 1500 *infra.*

amended complaint was filed thereafter. An order issued on July 28, 1992, granting plaintiff McConnell leave to file a second amended complaint to allege that defendants' violation of the ADEA was wilful. At that time, in accordance with Fed. R.Civ.P. 39(b),[8] a jury trial was ordered on all issues, since McConnell had possessed a right to a jury on his ADEA and FLSA claims.[9]

Defendants filed their motion for summary judgment in Civil Action 2:92cv22 on June 30, 1992, and a brief in support thereof on July 9, 1992. Plaintiff McConnell responded in opposition on July 17, 1992, precipitating a reply by defendants on July 24, 1992. Defendants filed their motion and brief for summary judgment in Civil Action No. 2:92cv28 on July 13–14, 1992. The EEOC filed a response on July 27, 1992, and defendants replied six days later. On July 29, 1992, the court requested further briefing on the applicable ADEA statute of limitations. Upon careful consideration of defendants' motions, it is concluded that both should be denied. In the interests of efficiency, the reasons for the denial of defendants' respective summary judgment motions will be set forth in this memorandum opinion, which is applicable to both actions.

## II. Standards for Adjudicating Summary Judgment Motions

Under Fed.R.Civ.P. 56(c), to prevail on a motion for summary judgment, the moving party bears the burden of demonstrating that the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact, and that it is entitled to judgment as a matter of law. *L & B Hosp. Ventures v. Healthcare Int'l, Inc.*, 894 F.2d 150, 151

(5th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 55, 112 L.Ed.2d 30 (1990). The movant must state the basis for the motion and identify the portion of the record that highlights the absence of genuine factual issues. *Topalian v. Ehrman*, 954 F.2d 1125, 1131–32 (5th Cir.1992), *petition for cert. filed*, 60 U.S.L.W. 3680 (June 4, 1992).

The substantive law underlying each of the claims in issue identifies which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If any such facts are genuinely in dispute, summary judgment is inappropriate. A factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. When assessing a motion for summary judgment, the court must make all factual inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 975 (5th Cir.1991). However, the judge is not to weigh the evidence, nor engage in credibility determinations. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510.

## III. Defendants' Statute of Limitations Arguments

Since defendants would have the burden of persuasion as to their defense of limitations at trial, they are initially required to produce a quantum of evidence in support of their motions for summary judgment that would entitle them to judgment as a matter of law, as provided by Fed.R.Civ.P. 50(a), on plaintiffs' FLSA and ADEA claims, assuming such evidence were not controverted at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548,

---

**8.** McConnell's motion was technically made under Fed.R.Civ.P. 38(b). However, the United States Court of Appeals for the Fifth Circuit approved the practice of treating an untimely jury demand under Fed.R.Civ.P. 38(b) as one under Fed.R.Civ.P. 39(b) in *Swofford v. B & W, Inc.*, 336 F.2d 406, 409 (5th Cir.1964), *cert. denied*, 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965).

**9.** The right to a jury trial under the ADEA is provided by 29 U.S.C. § 626(c)(2). Courts have construed such a right under the FLSA for suits, such as McConnell's, filed under 29 U.S.C. § 216(b), seeking overtime compensation and liquidated damages for violations of 29 U.S.C. § 207. *E.g.*, *Lewis v. Times Publishing*, 185 F.2d 457 (5th Cir.1950).

2556, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting); *accord* William W. Schwarzer, et al.; *The Analysis and Decision of Summary Judgment Motions* 45–46 (Federal Judicial Center 1991). After such a showing, the burden of production would shift to each of the plaintiffs to prove, by tendering competent evidence, that there is a genuine issue of material fact regarding whether the particular action is barred by limitations. *Topalian,* 954 F.2d at 1133. *See also* Fed.R.Civ.P. 56(e); Schwarzer, *supra,* at 47–52. The burden of persuasion as to a motion for summary judgment remains on the movant at all times. *Celotex,* 477 U.S. at 330 & n. 2, 106 S.Ct. at 2556 & n. 2 (Brennan, J., dissenting).

### A. McConnell's FLSA Claims

■ In *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988), the Supreme Court construed 29 U.S.C. § 255, which provides the applicable statute of limitations period for the FLSA. The section imposes a two-year statute of limitations on violations of the FLSA, unless such violations were willful, in which case the limitations period is three years. The statute is tolled when the plaintiff's FLSA complaint is filed. 29 U.S.C. §§ 255(a) & 256. The Supreme Court defined a willful violation of the FLSA as one where "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin,* 486 U.S. at 133, 108 S.Ct. at 1681. If an employer acts unreasonably, but not recklessly, in determining its legal obligations, willfulness is not established. *Id.; Uffelman v. Lone Star Steel Co.,* 863 F.2d 404, 408–09 (5th Cir.1989) (applying 29 U.S.C. § 255 to an ADEA claim), *cert. denied,* 490 U.S. 1098, 109 S.Ct. 2448, 104 L.Ed.2d 1003 (1989).

■ A plaintiff has the burden of persuasion at trial to establish that an employer's violation of the FLSA was willful. *Cox v. Brookshire Grocery Co.,* 919 F.2d 354, 356 (5th Cir.1990). Defendants have moved for the entry of summary judgment on the issue. Because the existence of willfulness is material to defendants' motion for summary judgment based on a two-year FLSA limitations period, the defendants initially must demonstrate that plaintiff McConnell has failed to offer sufficient evidence to support a finding of willfulness. However, defendants' own evidence establishes a genuine factual dispute.

In *Lopez v. Corporación Azucarera de Puerto Rico,* 938 F.2d 1510 (1st Cir.1991), the United States Court of Appeals for the First Circuit upheld a district court's granting of summary judgment for a defendant employer on the basis that the two-year statute of limitations applied to the plaintiffs' FLSA claims. However, the appellate court explicitly stated that plaintiffs would have easily established a genuine factual dispute as to willfulness had their counsel's statements—that plaintiffs' employer forbade them from putting all of their hours worked on their time cards to avoid the FLSA—complied with Fed. R.Civ.P. 56(e). *Lopez,* 938 F.2d at 1515–16. In *Lopez,* the determining factor in the awarding of summary judgment was that the plaintiffs had not attested to the truth of their counsel's recitations.

■ Here, by contrast, plaintiff McConnell gave testimony during his deposition, under oath, that he was told by various *Marshall News Messenger* management personnel that he was forbidden to put down his overtime on his time cards, and that no overtime pay would be given. (*passim* plaintiff's deposition pp. 106–117.) McConnell also testified to the effect that managing editors would tell employees that overtime pay was not available, but in the same breath make an assignment that they knew would run into overtime. (Plaintiff's Depo. p. 114 lines 12–15.) Plaintiff McConnell's evidence complies with the requirements of Fed.R.Civ.P. 56(e), and it is concluded that there is a genuine issue of fact as to willfulness.

■ Defendants have argued that, at a minimum, they are entitled to summary judgment on all violations that occurred

prior to January 2, 1989,[10] three years prior to the date McConnell filed his original action in state court. However, it is well settled that, in most federal causes of action, when a defendant's conduct is part of a continuing practice, an action is timely as long as the last act evincing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred. *Brenner v. Local 514, United Bhd. of Carpenters & Joiners*, 927 F.2d 1283, 1295 (3rd Cir.1991).

The United States Court of Appeals for the Fifth Circuit has explored the continuing violations doctrine and the FLSA:

[T]he continuing violations doctrine ... includes cases in which the original violation occurred outside the statute of limitations, but is closely related to other violations that are not time-barred. In such cases, recovery may be had for all violations, on the theory that they are all part of one, continuing violation.

*Hendrix v. Yazoo City*, 911 F.2d 1102, 1103 (5th Cir.1990) (footnotes omitted). At trial, the plaintiff must prove a continuing violation. *Brenner*, 927 F.2d at 1296; *Berry v. Board of Supervisors of La. State Univ.*, 715 F.2d 971, 983 (5th Cir.1983).

■ In this case, plaintiff McConnell has alleged continuing violations of the maximum hours provision of the FLSA, spanning January 1988 until January 2, 1990. This is a period both within and without the applicable statute of limitations period. If McConnell's continuing violation allegations are proved at trial, none of the relief requested by him would be barred by either the two-year statute of limitations,[11] or the three-year limitations period. The analysis of whether a violation of law is continuing depends on the facts and the context of a particular case. *Berry v. LSU*, 715 F.2d at 981. Relevant factors include whether the subject matter in a particular case connects the acts, the fre-

quency of the acts, and the permanence of the acts' effects. Whether there was a continuing violation is, therefore, an issue of fact material to this litigation.

■ Consequently, it is incumbent upon defendants to demonstrate that McConnell has offered insufficient evidence to support his allegation of a continuing violation, in order for them to prevail on their summary judgment motion. Even where the non-moving party has the burden of persuasion on an issue, the summary judgment movant still has the initial burden of *showing the absence* of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552 (emphasis added). Defendants have not addressed the continuing violations doctrine, let alone properly demonstrated an absence genuine issue of material fact. Consequently, defendants' motion for summary judgment as to all FLSA violations that occurred before January 2, 1989, will be denied.

### B. McConnell's ADEA Claim

■ Defendants argue that McConnell's claim is barred by a two-year statute of limitations imposed by 29 U.S.C. § 255, discussed above in connection with the FLSA. Until November 21, 1991, it was the law that this section provided the appropriate limitations period for ADEA claims. However, section 115 of the Civil Rights Act of 1991, P.L. 102–166, 105 Stat. 1099, codified at 29 U.S.C. § 626(e) (West Supp.1992), drastically altered the statute of limitations applicable to ADEA claims. New section 626(e) simply requires that a plaintiff bring an ADEA suit within ninety days of notice of the EEOC's dismissal of the plaintiff's administrative charge, or within ninety days of notice of the EEOC's termination of its administrative proceedings.

The application of section 115 of the Civil Rights Act of 1991 to a case filed after its

---

**10.** Defendants contend that January 2, 1989, would be outside the three year limitations period, but this is incorrect. See *infra* at p. 1496.

**11.** If McConnell does not show willfulness at trial, he would have to prove that at least one

violation of the FLSA occurred within the limitations period, *i.e.*, no earlier than January 2, 1990, in order to recover on any FLSA violations.

enactment is an issue of first impression.[12] Plaintiffs contend that the section should be employed, while defendants insist that 29 U.S.C. § 255 properly should provide the relevant limitations period. If the new limitations computation applies, it is certain McConnell's ADEA claims would be timely, because at the time he filed both his original and amended state court petitions, the EEOC had not yet notified him either of the dismissal of his charge or termination of its proceedings. The statute of limitations would not have begun to run when McConnell filed his claims.

### 1. New Section 626(e) Sets the Limitations Period for McConnell's Action

Four United States Courts of Appeals have considered the retroactive application of various provisions of the Civil Rights Act of 1991: *Landgraf v. USI Film Products*, 968 F.2d 427 (5th Cir.1992); *Banas v. American Airlines*, 969 F.2d 477 (7th Cir. 1992); *Johnson v. Uncle Ben's, Inc.*, 965 F.2d 1363 (5th Cir.1992); *Luddington v. Indiana Bell Tel. Co.*, 966 F.2d 225 (7th Cir.1992); *Mozee v. American Commercial Marine Serv. Co.*, 963 F.2d 929 (7th Cir. 1992); *Fray v. Omaha World Herald Co.*, 960 F.2d 1370 (8th Cir.1992); *Vogel v. Cincinnati*, 959 F.2d 594 (6th Cir.1992), *petition for cert. filed*, 60 U.S.L.W. 3881 (June 11, 1992). Among them they consider the retroactivity of sections 101, 102, 104, 105, and 112 of the Act.[13] Research has revealed no circuit or district court decision regarding section 115.

Each of the above circuit opinions rehearses, in varying detail, the current confusion surrounding the United States Supreme Court's retroactivity jurisprudence, which is elaborated in *Thorpe v. Housing Auth. of Durham*, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969); *Bradley v. Richmond School Bd.*, 416 U.S. 696, 716, 94 S.Ct. 2006, 2018, 40 L.Ed.2d 476 (1974); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988); and *Kaiser Alum. & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 837, 110 S.Ct. 1570, 1576, 108 L.Ed.2d 842 (1990). *See, e.g., Mozee*, 963 F.2d at 934–38; *Fray*, 960 F.2d at 1374–75. The many uncertainties as to the law in this area need not be repeated here. All circuits agree that the substantive provisions of the Civil Rights Act of 1991 do not apply to conduct that occurred before their appropriate effective dates. *E.g., Uncle Ben's*, 965 F.2d at 1372 (statutes affecting substantive rights are ordinarily addressed to the future and are to be given prospective effect only). In considering the substantive provisions, most courts have not distinguished between pending cases and cases filed after the applicable effective date. *Contra Luddington*, 966 F.2d at 229–30.

Several courts have buttressed their conclusions that the substantive provisions of the Act apply only prospectively by giving deference to a policy directive issued by the EEOC on December 27, 1991, Daily L.Rep. (BNA No. 1 at D–1 (January 2, 1992)), that it would not seek damages under § 102 of the Act based upon pre-enactment conduct. *E.g., Vogel*, 959 F.2d at 598. However, in *EEOC v. Arabian Oil Co.*, — U.S. —, —, 111 S.Ct. 1227, 1235, 113 L.Ed.2d 274 (1991), the Supreme Court distinguished the EEOC from administrative agencies and held that:

> the level of deference afforded [an EEOC interpretation of legislation] " 'will de-

---

**12.** This is not technically a question of "true retroactivity", *i.e.,* whether a change in the law should overturn a judicial adjudication of rights that has already become final. *Kaiser Alum. & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 864, 110 S.Ct. 1570, 1591, 108 L.Ed.2d 842 (1990) (White, J., dissenting). Rather, the proper analytical framework is whether the statute of limitations should be the one in effect when the plaintiff's claim accrued or when his civil suit was filed.

**13.** These sections make substantive changes to 42 U.S.C. § 1981; permit compensatory and punitive damages in cases of intentional employment discrimination under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*), the Americans with Disabilities Act of 1990 (42 U.S.C. § 12117(a)), and the Rehabilitation Act of 1973 (29 U.S.C. § 794a(a)(1)); alter the burdens of proof in Title VII disparate impact cases; and expand the time limits in which to challenge discriminatory seniority systems under Title VII.

pend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements and all those factors giving it power to persuade, if lacking power to control.'" (citations omitted).

*Accord Aiken v. Bucks Ass'n for Retarded Citizens, Inc.*, 799 F.Supp. 522, 532–533 (E.D.Pa.1992); *Smith v. Petra Cablevision Corp.*, 793 F.Supp. 417, 425, 426 (E.D.N.Y. 1992). Here, the EEOC has contended that the reasoning of *Uncle Ben's* supports application of the new 29 U.S.C. § 626(e) to this case, because only substantive changes are presumed non-retroactive and the statute of limitations at issue here is procedural. Under the standards enunciated in *Arabian Oil*, and because the Fifth Circuit's decision in *Landgraf*, as well as several other opinions, support the EEOC's analysis, it is concluded that the Commission's interpretation of the application of section 115 is correct. For the reasons set forth below, it is held that section 115 of the Civil Rights Act of 1991 should be applied to claims that accrued prior to November 21, 1991, provided that such claims were viable on that date.[14]

*Landgraf, Banas,* and *Mozee* address the application of certain procedure and damage provisions of the Civil Rights Act of 1991.[15] All three cases conclude that it would be manifestly unjust or confusing to apply procedural changes to cases that have already been tried or are on appeal. *Landgraf,* 968 F.2d at 433; *Banas,* 969 F.2d at 484; *Mozee,* 963 F.2d at 940. However, all three decisions recognize that, in general, procedural rule changes apply to pending cases, and both *Banas* and *Mozee* acknowledged there are strong arguments in favor of applying the procedural changes made by the Civil Rights Act of 1991 to cases that have not gone to trial. *Id.; accord Lussier v. Dugger*, 904 F.2d 661, 665 (11th Cir.1990) ("statutory changes

that are procedural or remedial in nature apply retroactively"). Indeed, *Mozee* endorses, in *dicta,* a rule "that courts should apply the procedural and damage provisions in effect at the beginning of proceedings." 963 F.2d at 940.

■ *Sarfati v. Wood Holly Assoc.,* 874 F.2d 1523 (11th Cir.1989), thoroughly analyzed the issue of whether to apply the statute of limitations in effect at the time of the claim's accrual or the one in effect at the time the action is commenced. First, if a limitations statute is remedial or procedural in nature, and not a substantive limitation on a statutory right, it may be applied to existing causes of action. *Id.* at 1525; *accord FDIC v. New Hampshire Ins. Co.,* 953 F.2d 478, 487 (9th Cir.1991) (procedural statute of limitations not affecting substantive rights can be applied retroactively under *Georgetown* ). Second, the relevant legislative body may clearly manifest an intent to have an amended limitations statute apply to existing claims. *Sarfati,* 874 F.2d at 1525. Because Congressional intent on the retroactivity of any part of the 1991 Civil Rights Act is unclear, *e.g., Luddington,* 966 F.2d at 227 (Congress dumped the retroactivity question into the judiciary's lap without guidance), only the first line of analysis will be considered.

■ A statute of limitations may be procedural or substantive, and its characterization may vary depending on the context of the issue before a court. *E.g., Guaranty Trust Co. v. York,* 326 U.S. 99, 108–12, 65 S.Ct. 1464, 1469–71, 89 L.Ed. 2079 (1945). Whether a given statute of limitations is procedural or substantive depends on several factors, including whether the right of action existed at common law, and whether the statute of limitations appears in the same act as the statutorily created right. *Sarfati,* 874 F.2d at 1525–26. The proper characterization of the

---

**14.** By definition, this holding applies only to claims filed on or after November 21, 1991. Claims that were barred prior to that date cannot be revived. *Bellwood v. Dwivedi,* 895 F.2d 1521, 1527 (7th Cir.1990); *see also Banas,* 969 F.2d at 484. Claims timely filed November 21, 1991, will not need to resort to the new statute of limitations.

**15.** *Mozee* considers sections 102(b) (damages) and 102(c) (jury trial); *Landgraf* deals with the latter; and *Banas* with section 112.

**1496**

statute of limitations for ADEA claims is settled law. Every Circuit which has considered the issue has ruled that 29 U.S.C. § 255, incorporated by reference into the ADEA, 29 U.S.C. § 626(e), is merely a limitation on the remedy available, not on the right to bring the action, and is, thus, a procedural statute of limitations. *Hodgson v. Humphries*, 454 F.2d 1279, 1283 (10th Cir.1972) (FLSA); *Ott v. Midland–Ross Corp.*, 523 F.2d 1367, 1370 (6th Cir.1975) (ADEA); *Mumbower v. Callicott*, 526 F.2d 1183, 1187 n. 5 (8th Cir.1975) (FLSA); *accord Lopez v. Rodriguez*, 668 F.2d 1376, 1379 n. 4 (D.C.Cir.1981) (citing *Hodgson* and *Callicott* with approval); *Ford v. Temple Hosp.*, 790 F.2d 342, 348 (3d Cir.1986) (same). Because the statute of limitations for ADEA claims is procedural, there is no injustice in applying new § 626(e) to plaintiff McConnell's ADEA claim.

### 2. *Under Old Section 626(e), McConnell's Claim Still Would be Timely* [16]

■ The United States Court of Appeals for the Fifth Circuit has long held that statutes of limitations adopted after the enactment of Fed.R.Civ.P. 6(a) should be computed in accordance with the time provisions of that rule of civil procedure, unless Congress otherwise specifically directs. *Wilkes v. United States*, 192 F.2d 128, 129 (5th Cir.1951); *Lawson v. Conyers Chrysler, Plymouth, and Dodge Trucks, Inc.*, 600 F.2d 465, 465–66 (5th Cir.1979); *Vernell v. United States Postal Service*, 819 F.2d 108, 111 n. 6 (5th Cir.1987). The statute of limitations at issue here, 29 U.S.C. § 255, was part of the Portal-to-Portal Act of 1947, enacted ten years after the promulgation of Fed.R.Civ.P. 6(a). Thus, unless Congress has explicitly stated otherwise, Rule 6(a) applies.

The same language used in 29 U.S.C. § 255, that an action must filed "within two years after the cause of action accrued", has often been construed as consistent with computation in accordance with Fed.R.Civ.P. 6(a). *Vernell*, 819 F.2d at 110–111 (identical language in 28 U.S.C. § 2401(b)); *Maahs v. United States*, 840 F.2d 863, 865–866 (11th Cir.1988) (same statute). The parties agree that the date the old ADEA statute of limitations began to run is January 2, 1990. Under Rule 6(a), the day on which the triggering act occurred, here January 2, 1990, is excluded from computation. *Accord* Tex.R.Civ.P. 4. Therefore, the last timely date for filing suit would have been January 2, 1992, which is when McConnell filed his original state court petition.[17]

■ Defendants next argue that even if the original petition filed January 2, 1990, was timely, the claims against Lincoln WV, who was not named as a defendant until January 3, 1992, are barred by limitations. McConnell's claims against defendant Lincoln WV are timely if, and only if, his first amended petition is construed as relating back to his original petition. However, whether Texas law or Fed.R.Civ.P. 15(c) should govern whether McConnell's first amended state court petition related back is not immediately apparent under the doctrine set forth in *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

The Rules Enabling Act, 28 U.S.C. § 2072 (1992), *inter alia*, permits the Supreme Court to prescribe general rules of practice and procedure for cases in United States District Courts. Fed.R.Civ.P. 81(c) states that Federal Rules of Civil Procedure apply to civil actions removed to the United States district courts from the state courts and govern procedure *after* removal. *Winkels v. George A. Hormel & Co.*, 874

---

**16.** Analysis of McConnell's claims under old § 626(e) will also be undertaken. If it were the case that different results were reached under the old and new sections, the order denying defendants' motions for summary judgment on the basis of limitations might qualify for interlocutory appeal under 28 U.S.C. § 1292(b), as a controlling question of law.

**17.** Even if the statute had run on January 1, 1990, McConnell's action filed on January 2, 1992, would still have been timely under 29 U.S.C. § 255, since Fed.R.Civ.P. 6(a) mandates that if the last day of the period to be computed falls on a holiday, it must be excluded from computation. *Accord* Tex.R.Civ.P. 4.

F.2d 567, 570 (8th Cir.1989) (emphasis in appellate opinion). The nub is whether "relation back" should be analyzed as a procedure that occurs before or after removal.

The United States Court of Appeals for the Ninth Circuit ruled in *Anderson v. Allstate Ins. Co.*, 630 F.2d 677, 682 (9th Cir. 1980), that state law relation back law, rather than Fed.R.Civ.P. 15(c), governed where, as here, the relevant amendments were filed and served prior to removal of the case to federal court. In a somewhat analogous situation, the United States Court of Appeals for the Seventh Circuit expressed doubt that Fed.R.Civ.P. 15(c) could be applied to state court proceedings that took place before the case was removed to federal court consistent with the Rules Enabling Act and the Rules of Decision Act, 28 U.S.C. § 1652. *Peterson v. Sealed Air Corp.*, 902 F.2d 1232, 1234 (7th Cir.1990) (declining to rule on the issue because parties stipulated Fed.R.Civ.P. 15(c) controlled).

*Anderson v. Allstate* involved a federal cause of action, 42 U.S.C. § 1983, but because there is no explicit federal statute of limitations for such an action, state law is borrowed. *Del Costello v. International Bhd. of Teamsters*, 462 U.S. 151, 158–60, 103 S.Ct. 2281, 2287–89, 76 L.Ed.2d 476 (1983) (when there is no federal statute of limitations that is expressly applicable to suit, Congress intended courts to apply most closely analogous state statute of limitations); *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir.1992) (in § 1983 action state law determines limitations period and corresponding tolling doctrines). Conceivably, this difference might distinguish *Allstate* from the case at bar. The situation here further differs from *Peterson* because this is a federal question suit under 28 U.S.C. § 1331, rather than a diversity case under 28 U.S.C. § 1332. The state's interests in having its rules applied arguably were greater in both *Peterson* and *Allstate* than they are here.

However, the application of *Erie* does not depend on the jurisdictional basis of a federal action, but rather on the nature of the issue before the court. 3 James W

Moore, *Moore's Federal Practice.*, ¶ 15.-15[2] at 15–141 n. 1 (1992). If this case had not been removed to federal court, a Texas state court would have applied state relation back rules to determine whether McConnell's claims against defendant Lincoln WV were barred by former 29 U.S.C. § 626(e). *See Nail v. Wichita Falls & S.R.R. Co.*, 294 S.W.2d 431 (Tex.Civ.App.—Forth Worth 1956, no writ) (applying Texas relation back doctrine to statute of limitations for Federal Employers' Liability Act, 45 U.S.C. § 56). The United States Supreme Court has ruled that the question of whether a state court action arising under a federal statute is pending in state court at the time the federal statute of limitations runs is a question of state law. *Herb v. Pitcairn*, 324 U.S. 117, 120, 65 S.Ct. 459, 460, 89 L.Ed. 789 (1945), *supplemented*, 325 U.S. 77, 65 S.Ct. 954, 89 L.Ed. 1483 (1945). *Accord Winkels*, 874 F.2d at 570 (Fed.R.Civ.P. 3 is irrelevant to whether action later removed properly "commenced" in state court).

It is difficult to fathom how a Texas state court could apply Fed.R.Civ.P. 15(c), which is purely procedural, to determine whether an amended petition related back to an original one, even where the cause of action and limitations period are governed by federal law, without transgressing the bounds of 28 U.S.C. § 2072. *See Johansen v. E.I. Du Pont De Nemours & Co.*, 810 F.2d 1377, 1380 (5th Cir.) (citing *Hanna v. Plumer*, 380 U.S. 460, 470, 85 S.Ct. 1136, 1143, 14 L.Ed.2d 8 (1965)), *cert. denied*, 484 U.S. 849, 108 S.Ct. 148, 98 L.Ed.2d 104 (1987). Rule 15(c) is merely a uniform solution in federal court practice to the problem of when amendments are sought in a pending case after the statute of limitations has run. *See Lindley v. General Elec. Co.*, 780 F.2d 797, 800 (9th Cir.) (quoting *Rumberg v. Weber Aircraft*, 424 F.Supp. 294, 301 (C.D.Cal.1976)), *cert. denied*, 476 U.S. 1186, 106 S.Ct. 2926, 91 L.Ed.2d 554 (1986). There is simply no collision between Fed. R.Civ.P. 15(c) and Texas relation back doctrine here, because it is concluded that Fed. R.Civ.P. 15(c) does not apply.

*Pitcairn* and its progeny control here, because the salient issue is whether McConnell's state court action against defendant Lincoln WV was timely filed in the District Court of Harrison County, 71st Judicial District of Texas, at the time the case was removed to federal court by defendants. Removal does not deny a defendant a defense available in state court. *Mullen v. Sears, Roebuck and Co.*, 887 F.2d 615, 618 (5th Cir.1989).[18] Therefore, it is held that Texas law should govern whether McConnell's January 3, 1992, amended petition action related back to his original petition, and consequently whether claims against Lincoln WV are timely. *Cf. Hensgens v. John Deere & Co.*, 869 F.2d 879, 880 (5th Cir.) (where amendments to original state court petition to correct misnamed defendant are filed after removal, which occurred after statute of limitations had run, Fed.R.Civ.P. 15(c) controls), *cert. denied*, 493 U.S. 851, 110 S.Ct. 150, 107 L.Ed.2d 108 (1989).

Texas courts have determined that when the wrong corporate defendant is sued and the proper corporate defendant is not named until after the statute of limitations has run, the amended petition will relate back, and limitations will not bar the suit against the proper defendant, so long as 1) the latter is cognizant of the facts underlying the plaintiff's suit; 2) the proper defendant is not misled; 3) the proper defendant is not placed at a disadvantage in obtaining the relevant evidence necessary for its defense, 4) there is a business relationship between the two defendants. *Palmer v. Enserch Corp.*, 728 S.W.2d 431, 433 (Tex.App.—Austin 1987, writ ref'd n.r.e.) (citing *Continental S. Lines, Inc. v. Hilland*, 528 S.W.2d 828, 831 (Tex.1975), and *Matthews Trucking Co. v. Smith*, 682 S.W.2d 237 (Tex.1985)). The *Palmer* court held that the only issue in such a case is whether the protection of the limitations statue is equitable under the facts, once the correct party was named. The plaintiff's diligence in discovering the correct corporate defendant is irrelevant. *Id.*

The Texas Supreme Court adopted this reasoning in *Enserch Corp. v. Parker*, 794 S.W.2d 2, 5 (Tex.1990), and, thus, the above *Palmer* doctrine is binding law. The four prerequisites outlined in *Palmer* are satisfied in this case. The crucial question under *Enserch* is whether there will be any prejudice to Lincoln WV under the circumstances. 794 S.W.2d at 5–6. There is no question that McConnell's one day delay in filing the suit against Lincoln WV will not alter that defendant's ability to defend against McConnell's suit on the merits. Under Texas law, McConnell's January 3, 1992, first amended petition should be held to relate back to his timely original petition, since application of the application of the two-year bar to the claims against Lincoln WV would be inequitable, and not serve the purposes of the applicable statute of limitations.

Even if Fed.R.Civ.P. 15(c) were applied here, the result would be the same. Until December 1, 1991, the Supreme Court's decision in *Schiavone v. Fortune*, 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986) provided the analytical framework for application of Fed.R.Civ.P. 15(c):

> (1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed limitations period.

477 U.S. at 29, 106 S.Ct. at 2384. All four factors must be satisfied. Amendments to Fed.R.Civ.P. 15(c), effective December 1, 1991, and applicable to all actions filed

---

18. 28 U.S.C. § 1441(e) was added in 1990 to prevent dismissal of an action, which had been removed to federal court, because the state court from which the action was removed lacked subject matter jurisdiction over the action at the time of removal. The issue here is not whether the Texas court had subject matter jurisdiction over McConnell's action; clearly, it did. Rather, the question is whether McConnell's claims against defendant Lincoln WV, first asserted on January 3, 1992, were time barred.

thereafter, overruled *Schiavone* by modifying the fourth factor. Now, the second and third factors need be satisfied within the time provided by Fed.R.Civ.P. 4(j) for service of the summons, *i.e.*, within 120 days from the filing of the original complaint. It is beyond dispute that McConnell satisfied the requirements of new Fed.R.Civ.P. 15(c). *See Barkins v. International Inns, Inc.*, 825 F.2d 905, 906–07 (5th Cir.1987) (timely notice to counsel shared by improper and proper defendant satisfies Fed.R.Civ.P. 15(c)).[19] No matter what limitations period, or relation back doctrine, applies McConnell's ADEA claims are not barred by the statute of limitations.

### C. The EEOC's ADEA Claim

#### 1. *Application of New 626(e)*

■■■ For the reasons set forth above, section 115 of the Civil Rights Act of 1991 should apply to the EEOC's ADEA claim, since it was viable on November 21, 1991, and was filed after that date. New 29 U.S.C. § 626(e) limits its application to suits filed by "persons" within the meaning of 29 U.S.C. § 630(a). That section defines "person" as including one or more individuals, partnerships, associations, labor organizations, corporation, business trusts, legal representatives, or any organized group of persons. The EEOC is not specifically listed within the definition of "person" provided by section 630(a). By construction, it is concluded that the EEOC is a "legal representative" for the purposes of that section when it files a civil action on behalf of an individual to enforce the ADEA. *Accord EEOC v. Corry Jamestown Corp.*, 719 F.2d 1219, 1222–23 (3d Cir.1983); *see also EEOC v. Brown & Root, Inc.*, 725 F.2d 348, 350 (5th Cir.1984) (per curiam) (rejecting narrow interpretation of "person", and joining all other circuits in concluding that the EEOC is a "person" for the purposes of the ADEA right to a jury trial, 29 U.S.C. § 626(c)(2)).

■■ New section 626(e) starts the limitations period when "the person aggrieved" receives notice of the dismissal of a charge or the termination of EEOC proceedings. Section 626(b) provides that the EEOC must attempt to eliminate the discriminatory practices alleged and to effect voluntary compliance with the requirements of the ADEA through informal methods of conciliation, conference, and persuasion, before filing a civil action. Reading 626(b) and 626(e) together, it is concluded that the EEOC must notify the person aggrieved by the purportedly discriminatory conduct when its informal methods of resolution fail, and that it has ninety days from the date of receipt of that notice by the person aggrieved to file a civil action.

This interpretation is consistent with Congress' overall purpose in enacting section 115 of the Civil Rights Act of 1991. The amendments release private individuals from a limitations period calculated from the date of the supposedly discriminatory conduct. The clock runs only after the EEOC has notified the person that it has dismissed the administrative charge, or has finished its administrative proceedings, however long these steps may take. Under the construction of new § 626(e), the identical events would trigger the start of the limitations period for suits by the EEOC. Prior § 626(e)(2) provided the same limitations period for both private and EEOC suits.

The superseded law tolled the statute for the EEOC, but not private parties, during the time the EEOC was attempting to effect voluntary compliance, for a period up to one year.[20] *Heiar v. Crawford County, Wisc.*, 746 F.2d 1190, 1196 (7th Cir.1984), *cert. denied*, 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985). If the EEOC does not dismiss a complainant's charge, new § 626(e) ties the limitations on civil suits by

---

19. Even under the version of Fed.R.Civ.P. 15(c) in effect prior to December 1, 1991, the claims against Lincoln WV would have been timely under *Barkins* (*Schiavone* did not overrule Fifth Circuit precedent on what notice satisfies Fed.R.Civ.P. 15(c)).

20. After the filing of a charge, the EEOC must attempt to eliminate the discriminatory practice under § 626(d). Prior § 626(e)(2) made clear only conciliation under § 626(b) tolled the statute, and thus only the EEOC could take advantage of tolling.

private parties to the receipt of notice of the end of EEOC administrative proceedings. The limitations statute likewise should be read to link the timeliness of EEOC civil suits to notice of the end of voluntary compliance measures, since such measures differ only in that they are pursued in accordance with 29 U.S.C. § 626(b), rather than § 626(d).

It is not known when the EEOC notified McConnell of the termination of its proceedings, although the EEOC sent a copy of its February 12, 1992, letter declaring attempts at voluntary compliance to have been unsuccessful to plaintiff's attorney. Even assuming notice occurred on February 12, 1992, the EEOC's complaint, filed on March 6, 1992, would be timely under new § 626(e), because the action commenced within ninety days of the notice to the aggrieved person regarding the termination of EEOC administrative proceedings.

Finally, the EEOC's claims against defendant Lincoln WV are also timely, since the EEOC's first amended complaint, filed on July 21, 1992, related back to its timely original complaint, under Fed.R.Civ.P. 15(c), which indisputably governs the EEOC's action. All four prongs of the Fed.R.Civ.P. 15(c) relation back doctrine were satisfied in light of *Barkins.* Therefore, defendants' motion for summary judgment on the grounds of a limitations bar against the EEOC's claims will be denied.

### 2. *Application of Superseded Provisions*

 Even if old § 626(e) applied to the EEOC's action, it would still have been filed in a timely fashion. As stated above, prior 29 U.S.C. § 626(e)(2) tolled the two year statute of limitations provided 29 U.S.C. § 255 for up to a year, provided the EEOC was engaging in an attempt to effect voluntary compliance by informal methods. *EEOC v. Rhone–Poulenc,* 876 F.2d 16, 17 (3d Cir.1989); *EEOC v. Colgate–Palmolive Co.,* 586 F.Supp. 1341,

1344–45 (S.D.N.Y.1984). Conciliation began on September 27, 1991, the date of the issuance of EEOC's determination letter. *EEOC v. Barrett, Haentjens & Co.,* 705 F.Supp. 1065, 1068–69 (M.D.Pa.1988). Plaintiff EEOC insists that attempts at informal methods of resolution did not end until February 12, 1992, when it sent a letter proclaiming the fact that conciliation had failed. Defendants insist that meaningful steps towards an informal resolution ended in November 1991, and that any voluntary compliance attempts between then and February 1992 were *pro forma,* and did not toll the statute of limitations.[21]

The cases defendants cite in support of their contention are factually dissimilar from the one at bar, and actually support the EEOC's position. The *Colgate–Palmolive* court determined that the EEOC's letter noting the failure of conciliation marked the end of the conciliation period. 586 F.Supp. at 1344–45. In *EEOC v. Britrail Travel Int'l Corp.,* 733 F.Supp. 855 (D.N.J.), *aff'd without op.,* 919 F.2d 134 (3d Cir.1990), the EEOC acknowledged in a letter sent to one of the aggrieved persons and the defendant that conciliation had been a failure, although it was open to an offer. After five months of no action whatsoever, the EEOC filed suit. The *Britrail* judge ruled that conciliation ended at the time of the letter.

Here, the exchanges of correspondence between defendants and the EEOC were as follows:

1. September 27, 1991: Letter from EEOC states that a representative from the EEOC would contact defendants to arrange conciliation meeting;

2. October 22, 1991: Letter from EEOC outlines basic goals;

3. November 11, 1991: Letter from defendants states that they will consider only nuisance value settlement offers and that they will not settle the matter on the basis of backpay;

**21.** The basic historical facts surrounding the conciliation question are undisputed. The ultimate factual question of when "conciliation", within the meaning of 29 U.S.C. § 626, ended is the type of issue of ultimate fact more suitable for resolution by a court than the jury.

4. November 22, 1991: Letter from EEOC asks for "nuisance value settlement" offer in writing;

5. November 26, 1991: Letter from defendants offers $500, no reinstatement, and acceptance of a release;

6. January 9, 1992: Letter from EEOC informing defendants of non-monetary relief it deems appropriate, and reiterating desire to conciliate. Conciliation agreement addressed to various kinds of relief and reporting requirements;

7. February 10, 1992: Telephone call from defendants stating that they did not want to conciliate further;

8. February 12, 1992: Letter from EEOC declaring conciliation a failure.

■ Defendants argue that their November 1991, letters indicated that no voluntary resolution was possible. Defendants' letters unambiguously do not state this. The proposals offered by the EEOC in January were not precluded by defendants' letter. Even if the letters could be read as rejecting voluntary compliance, conciliation does not end when an employer says it ends. *Barrett*, 705 F.Supp. at 1074. The EEOC did not drag its heels in this case;[22] rather it engaged in a good faith effort to discharge its statutory duties. It is concluded that the two year statute would have been tolled between September 27, 1991, and February 12, 1992, for the reason that the EEOC was actively engaged in § 626(b) informal methods of obtaining compliance. Because the two-year statute of limitations would not have run until early July 1992, the EEOC's March 6, 1992, complaint was timely under old § 626(e).

## IV. *Plaintiffs' Substantive Allegations*

### A. The Alleged ADEA Violations

#### 1. *Evidence of Age Discrimination*

Both plaintiffs allege that defendants intentionally engaged in disparate treatment of McConnell on account of his age, in violation of 29 U.S.C. § 623(a)(1). To ease the evidentiary burdens imposed on employment discrimination plaintiffs, the Supreme Court, in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–06, 93 S.Ct. 1817, 1823–26, 36 L.Ed.2d 668 (1973), and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–58, 101 S.Ct. 1089, 1093–96, 67 L.Ed.2d 207 (1981), formulated the evidentiary procedure for Title VII cases (42 U.S.C. § 2000e *et seq.*) in which there is no direct evidence of discriminatory treatment. *Thornbrough v. Columbus & Greenville R. Co.*, 760 F.2d 633, 638 (5th Cir.1985); *see also Hanchey v. Energas Co.*, 925 F.2d 96, 97 (5th Cir.1990) (per curiam). The United States Court of Appeals for the Fifth Circuit has applied the *McDonnell Douglas* framework to ADEA cases. *Thornbrough*, 760 F.2d at 638 n. 4.

First, the plaintiff has the burden of proving a prima facie case of discrimination by a preponderance of the evidence. If the plaintiff succeeds, a presumption of discrimination is created and the burden shifts to the defendant to produce admissible evidence of a clear, reasonably specific, legitimate, and non-discriminatory reason for its actions, one which is legally sufficient to justify a judgment for a defendant. If the defendant fails to rebut the presumption of discrimination, judgment must be entered for the plaintiff. *See also* Fed.R.Evid. 301.

Should the defendant carry its burden of production, the plaintiff must then have the opportunity to prove, by a preponderance of the evidence, that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. A plaintiff may fulfill this third step either directly, by introducing evidence that a discriminatory reason more likely than not motivated the employer, or indirectly, by showing that the employer's proffered explanation is unworthy of credence. Ultimately, a plaintiff must prove that it is more likely than not he was the victim of

---

**22.** The delay in responding to defendants' November 26, 1991, letter is readily explained by the customary slowdown of governmental bureaucracy associated with the Thanksgiving, Christmas, and New Year's holidays.

**1502**

intentionally discriminatory treatment, *i.e.,* that intentional discrimination played a determinative role in the adverse employment action.

 A plaintiff can establish a prima facie case with relative ease. *Amburgey v. Corhart Refractories Corp.,* 936 F.2d 805, 812 (5th Cir.1991). However, " 'the necessary elements of a prima facie case of employment discrimination are not Platonic forms, pure and unchanging; rather, they vary depending on the facts of a particular case....' " *Id.* (quoting *Thornbrough,* 760 F.2d at 641). In a case where the plaintiff claims he was fired because of age, the plaintiff's prima facie case comprises the following elements: (1) he was a member of the protected class;[23] (2) he was discharged; (3) he was qualified to perform the job; and (4) he was replaced by a younger person or a person outside the protected class. *Guthrie v. Tifco Indus.,* 941 F.2d 374, 376 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1267, 117 L.Ed.2d 495 (1992).

 However, in a situation where there has been a reduction in the employer's work force, the prima facie elements are slightly different: A plaintiff must demonstrate that (1) he is within the protected age group; (2) he was adversely affected by the employer's decisions; (3) he was qualified to assume another position at the time of the adverse employment decision; and (4) there is evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue. *Amburgey,* 936 F.2d at 812 (quoting *Thornbrough,* 760 F.2d at 642). Regarding the last factor, a plaintiff must produce some evidence that the employer has not treated age neutrally, *i.e.,* a reasonable factfinder must be able to conclude either that the defendant consciously refused to consider retaining the plaintiff because of his age, or viewed the plaintiff's

age as a negative factor in such consideration. *Thornbrough,* 760 F.2d at 642.

In the case at bar, the parties dispute whether the defendants' decision to discharge McConnell from employment was part of a reduction in force or a termination from employment coupled with a nominal change in the job description of McConnell's replacement.[24] It is arguable which prima facie test should apply to the claims of McConnell and the EEOC. However, as explained below, it is concluded that, under either rubric, both plaintiffs have raised a genuine issue of material fact as to the existence of each element of the prima facie cases.

 In their papers, defendants appear to misapprehend the relationship between summary judgment and the prima facie case. In *Thornbrough,* Judge Goldberg keenly analyzed this issue, and the Fifth Circuit recently reiterated his conclusions:

Because in the ADEA context, prima facie case "refers to evidence that creates a legally mandatory, rebuttable presumption that the proposing party should prevail ... *there is no inherent relation between the failure to establish a prima facie case and summary judgment.* The failure to establish the prima facie case means merely ... that the factfinder is not *required* to find in the plaintiff's favor...."

"Thus to the extent that the failure to establish a prima facie case warrants summary judgment, this is not due to the logical relation between the doctrines of prima facie case and summary judgment but to the particular elements of a prima facie *employment discrimination* case.... Given these minimal requirements [for a prima facie case], *the failure to establish a prima facie case generally means that there are no material facts at issue.*"

*Amburgey,* 936 F.2d at 812 (quoting *Thornbrough,* 760 F.2d at 641 n. 9) (empha-

---

**23.** At least forty years of age. 29 U.S.C. § 631(a).

**24.** Oddly, defendants articulate the test applicable to discharges, although they apply it as if

this were a job elimination situation; plaintiff McConnell adopts a reduction of force perspective; the EEOC considers this a discharge case.

sis supplied by *Amburgey* court).[25] Therefore, to defeat defendants' motions for summary judgment as to their prima facie cases, plaintiffs need merely show they have sufficient evidence from which a reasonable trier of fact could find that the elements of the prima facie case have been proved. They do not need to prove their prima facie cases by a preponderance of the evidence.

It is undisputed that the plaintiffs can establish the first two elements of either the discharge or reduction-of-force prima facie case. In discharge situations, the Fifth Circuit has held that a plaintiff can establish the third prong by demonstrating he continued to possess the necessary qualifications for the job at the time of the adverse action, specifically, that the plaintiff had not suffered physical disability, the loss of a necessary occupational license, or some other occurrence that rendered him unfit for the position for which he was hired. *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1506 n. 3 (5th Cir.1988). There is no evidence that McConnell became unfit for the job of chief photographer, and, thereby, the qualification element would be established, if this were considered an ordinary discharge case. As for the final discharge-situation factor, there is at least a genuine issue of material fact as to whether McConnell was "replaced" by Dimmett, since there is evidence that Dimmett's job differed from McConnell's in name only. *Accord Jacobson v. Pitman–Moore, Inc.*, 573 F.Supp. 565, 570 (D.Minn.1983). Under *Guthrie*, it is clear that plaintiffs have established a genuine issue for trial.

Treating these actions as involving a reduction of force situation complicates the matter somewhat. In this light, plaintiffs must produce evidence that McConnell was qualified for the new position of writer/photographer at the time of the discharge. There is plainly a genuine dispute over the material facts regarding McConnell's qualifications for this job. Defen-

dants argue that because McConnell could not use a computer to compose photo cuts or write articles, he was not qualified for the position. However, plaintiffs have introduced competent evidence which could support a reasonable finding that while Dimmett's job had a different title from McConnell's, the actual, as opposed to nominal, qualifications for it were identical to those for McConnell's position. While defendants are correct that plaintiffs have not actually established McConnell's qualifications for the new position based on the summary judgment record, this is not necessary to defeat defendants' motion for summary judgment.

In a reduction of force case, the plaintiff's fourth task is to introduce sufficient evidence of non-neutral treatment. This is not a preponderance of the evidence standard. Thus, on summary judgment, the plaintiff's evidentiary burden is even less strenuous than that described above. Certain comments of defendants' managerial personnel are, in themselves, sufficient to create a genuine issue of fact as to whether there is some evidence of age discrimination associated with the adverse actions against McConnell. The newspaper's publisher, George Smith, testified that the reason for the changes at the *Marshall News Messenger* were over-specialization by some staff and the need for diversification. (Smith Depo. at 16.) He also testified that the age of specialization in the newspaper business was coming to an end. *Id.* Also, defendants proffered that McConnell was either unwilling or unable to learn to use a computer. Smith recalled admonishing McConnell that he had "to learn to adapt" to the new system. (*Id.* 58–59.) Finally, the publisher stated that McConnell's successor could bring more versatility to the department. (*Id.* at 66).

" 'Versatile' may be virtually a synonym for 'young'. It is not infrequently the case that long-term employees tend to become specialized, doing primarily the things they do best and doing them with the encourage-

---

**25.** As Judge Goldberg also noted, a plaintiff's failure to establish a prima facie case does not mean that the factfinder is not *permitted* to find

in the plaintiff's favor. *Thornbrough*, 760 F.2d at 641 n. 9 (emphasis in original).

ment of their employer." *Aungst v. Westinghouse Elec. Corp.*, 937 F.2d 1216, 1226 (7th Cir.1991) (Cudahy, J., dissenting). Smith's comments about the end of an "age" in the newspaper business may be construed as a statement that the organization needed younger workers. Also, a reasonable jury could view the charge that McConnell could not/would not learn to use a computer as indicative of a common stereotype about older workers: they cannot keep up with new technologies and must be replaced.

There is evidence in the record from which a jury could find the final element in a reduction of force prima facie case is satisfied. Given that both plaintiffs have demonstrated a genuine issue of material fact as to the existence of a prima facie case, and can thus survive defendants' motions for summary judgment, the next step in the inquiry is to determine whether defendants have produced some evidence from which a rational jury could determine that the presumption of discrimination has been rebutted. There is little question that defendants have met their burden. Therefore, attention must be turned to the third stage—pretext—where most disparate treatment cases are resolved. *Amburgey*, 936 F.2d at 811 (quoting *Thornbrough*, 760 F.2d at 639 n. 6).

As noted above, plaintiffs need not prove pretext at this stage of the litigation, but merely must raise a genuine issue of fact as to whether defendants' articulated grounds for dismissing McConnell were pretextual. *Id.* at 813 (quoting *Thornbrough*, 760 F.2d at 646). Pretext may be proven directly or indirectly; nonetheless, there must be some evidence countervailing the defendants' explanation before the trier of fact. *Guthrie*, 941 F.2d at 377. The issue is not whether defendants' personnel actions were unreasonable or whether defendants misjudged McConnell's qualifications. *Hanchey*, 925 F.2d at 98; *Lloyd v. Georgia Gulf Corp.*, 961 F.2d 1190, 1196

(5th Cir.1992). The ADEA was not intended to be a vehicle for second-guessing business decisions. *Thornbrough*, 760 F.2d at 647. But if the jury concludes that the employer's explanation lacks veracity, a jury may infer that a decision was unlawfully motivated. *Lloyd*, 961 F.2d at 1196 (quoting *Bienkowski*, 851 F.2d at 1507–08).

In general, summary judgment is an inappropriate tool for resolving questions of employment discrimination, which involve nebulous questions of motivation and intent. *Thornbrough*, 760 F.2d at 640; *accord Johnson v. Minnesota Historical Soc.*, 931 F.2d 1239, 144 (8th Cir.1991). There is, nevertheless, no reason to have a trial in patently meritless cases presenting only an attenuated possibility that the jury would find a discriminatory motive. *See Amburgey*, 936 F.2d at 814. The sworn depositions and affidavits in this case, discussed above, are competent summary judgment evidence to establish at least a "thin vapor" of pretext, and that a genuine issue of fact exists regarding defendants' motivations in discharging McConnell. *See Thornbrough*, 760 F.2d at 645 n. 19, 647–48; *Amburgey*, 936 F.2d at 814. In addition to the evidence considered earlier, the deposition testimony of a former news editor of the *Marshall News Messenger* that the paper's publisher told him to assign stories to Dimmett to "cover our asses" because of McConnell's charge of age discrimination is indicative of a pretextual discharge.[26] Here, there is more than an attenuated possibility that a reasonable jury could infer age discrimination, and, accordingly, defendants' motions for summary for summary judgment as to plaintiffs' ADEA claims will be denied.

### 2. *Proof of Willfulness*

Congress intended the ADEA to possess a two-tiered liability scheme. *Trans World Airlines v. Thurston*, 469 U.S. 111, 128, 105 S.Ct. 613, 625, 83 L.Ed.2d

---

**26.** Defendants are correct that Lyons' subjective belief that McConnell was discharged for reasons of age no more creates a genuine issue of fact than McConnell's own belief of age discrimination. *Little v. Republic Refining Co.*, 924 F.2d 93, 96 (5th Cir.1991). Moreover, in *Little*, the Fifth Circuit rejected the proposition that a discharge based on a supervisor's intimidation regarding a subordinate's greater experience is the same as age discrimination. *Id.*

523 (1985). In the context of the ADEA, a plaintiff's proof of wilfulness at trial allows for the doubling of any backpay award as liquidated damages. *Burns v. Texas City Refining*, 890 F.2d 747, 752 (5th Cir.1989); 29 U.S.C. § 629(b). An ADEA violation is willful for the purposes of assessing liquidated damages only if the employer knew. or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA. *Thurston*, 469 U.S. at 128–29, 105 S.Ct. at 625; *Burns*, 890 F.2d at 751. Liquidated damages are punitive in nature and should be reserved for the most egregious violations of the ADEA. *Normand v. Research Instit. of Am.*, 927 F.2d 857, 865 (5th Cir.1991). Good faith and. negligent violations of the ADEA do not suffice as a predicate for the·imposition of liquidated damages. *Thurston*, 469 U.S. at 129; *Burns*, 890 F.2d at 751.

*Thurston* involved a case where the allegedly willful adverse action was a company-wide plan or policy. Several circuits have recognized that there is a conceptual problem in applying the *Thurston* standard to a situation of alleged individualized, disparate treatment. *E.g., Lindsey v. American Case Iron Pipe Co.*, 810 F.2d 1094, 1100 (11th Cir.1987); *Cooper v. Asplundh· Tree Expert Co.*, 836 F.2d 1544, 1549 (10th Cir.1988); *Kelly v. Matlack*, 903 F.2d 978, 983 (3rd Cir.1990); *Wheeler v. McKinley Enterp.*, 937 F.2d 1158, 1164 (6th Cir.1991). Since a plaintiff will necessarily show that the employer intentionally discriminated against him as an individual on account of age to recover any damages, there is a danger that all ADEA violations will appear "wilful" in such a context.

The Courts of Appeals have set forth various circumstances where liquidated damages may be imposed on account of egregious employer conduct. Liquidated damages may be awarded in the Sixth and Tenth Circuits when age is "the" predominant factor in the discharge of an employee. *Wheeler*, 937 F.2d at 1164; *Cooper*, 836 F.2d at 1551. The Eleventh Circuit allows liquidated damages when there is a finding of pretext plus proof that the employer knew of the ADEA's provisions. *Formby v. Farmers & Merchants Bank*, 904 F.2d 627, 632 (11th Cir.1990). Finally, the Third Circuit has adopted an *ad hoc* inquiry into whether particular circumstances were outrageous, which might include: a previous violation of the ADEA by the employer; a discharge at a time when it would deprive a person of a pension; or a violation when there was a systematic purging of older employees. *Kelly v. Matlack, Inc.*, 903 F.2d 978, 982, 982 n. 2 (3d Cir.1990) (citation omitted).

The Fifth Circuit has not specifically faced this issue, and the cases considering willfulness have not endorsed any of the above standards. In *Uffelman v. Lone Star Steel*, 863 F.2d 404, 410 n. 5 (5th Cir.1989), *cert. denied*, 490 U.S. 1098, 109 S.Ct. 2448, 104 L.Ed.2d 1003 (1989), the court cited "the predominant factor" test without approval, but pronounced the Third Circuit's requirement of· outrageous conduct to be uncalled for by *Thurston*. On the other hand, the *Uffelman* court upheld the jury's consideration of the time of dismissal in relation to the vesting of a pension ·as evidence of willfulness. *Id.;* accord *Burns*, 890 F.2d at 752. The Fifth Circuit's opinion in· *Normand* seems to adopt a punitive damages perspective similar to that of the Third Circuit. 927 F.2d at 865. Finally, *Burns* indicates that if the evidence supports a finding the employer's explanation for a discharge was deliberately contrived to protect it from ADEA· liability, willfulness may be inferred. 890 F.2d at 751–52.[27]

The ADEA is remedial and humanitarian legislation and should be interpreted liberally to effect the congressional purpose of ending age discrimination in employment. *MacDonald v. Eastern Wyo. Mental Health Center*, 941 F.2d 1115, 1118 (10th Cir.1991) (citation omitted). In the absence of guidance from the Fifth Circuit, plaintiffs will be allowed to attempt to

---

**27.** The Fifth Circuit has also approved liquidated damages when a discharge was in retaliation for filing an ADEA claim. *Powell v. Rock-* *well Int'l Corp.*, 788 F.2d 279, 285–88 (5th Cir. 1986).

prove willfulness to the jury to obtain liquidated damages, if there is sufficient evidence to invoke any of the circumstances outlined above. The evidence of willfulness in the summary judgment record is not overwhelming. However, the affidavit of Rick Lyons regarding publisher Smith's comments to him that stories should be assigned to Dimmett "to cover our asses" is sufficient to create a genuine factual dispute as to the willfulness of any ADEA violation. Therefore, defendants' motion for summary judgment as to willfulness, and the issue of liquidated damages, will be denied.

B. McConnell's FLSA Overtime Claims

■■■■■ McConnell alleges a violation of the maximum hours-overtime provision of the FLSA, 29 U.S.C. § 207(a)(1). Enforcement of this provision is governed by 29 U.S.C. §§ 216(b) and 217. Compensatory liquidated damages in the amount equal to backpay awarded are recoverable. 29 U.S.C. § 216(b). If a defendant shows the court—not the jury—that the act violating the FLSA was taken in good faith, and that it had reasonable grounds for believing that the act was not a violation of the FLSA, the court may order no, or reduced, liquidated damages. 29 U.S.C. § 260; *e.g.,* *LeCompte v. Chrysler Credit Corp.,* 780 F.2d 1260, 1261–62 (5th Cir.1986). An employer cannot avoid liquidated damages by asserting that lower level employees are responsible for violations or that it was ignorant of the FLSA. *LeCompte,* 780 F.2d at 1262. If an employer fails to carry its burden of demonstrating good faith and reasonable grounds, an award of liquidated damages is mandatory. *Martin v. Selker Bros., Inc,* 949 F.2d 1286, 1299 (3d Cir. 1991).

In order to establish a 29 U.S.C. § 207(a)(1) violation, McConnell must establish that his employer "employed" him for a workweek longer than forty hours without overtime compensation of one and one-half times his regular rate of pay. Twenty-nine U.S.C. § 203(g) reads: " 'employ' includes to suffer or permit work." Courts have construed the words "suffer" and "permit" to mean "with knowledge of the

employer." *Davis v. Food Lion,* 792 F.2d 1274, 1276 (4th Cir.1986); *Forrester v. Roth's I.G.A. Foodliner, Inc.,* 646 F.2d 413, 414 (9th Cir.1981). Therefore, in order to prove he was "employed" for the purposes of the Act, plaintiff must show that his employer either knew, or should have known, that the plaintiff was working overtime for the employer. *Davis,* 792 F.2d at 1277.

■■■■■ It is not for the employer to prove lack of knowledge as an affirmative defense. *Id.* Therefore, to prevail on summary judgment on this issue, defendants simply need show that there is no genuine issue of fact as to their knowledge of McConnell's working overtime. Defendants argue that their written policy requiring the reporting of all overtime hours coupled with McConnell's admitted failure to do so, should shield them from liability. However, if a written policy is, in practice, a mere "piece of paper", it is of little consequence. McConnell testified, under oath, in his deposition that managerial employees of the *Marshall News Messenger* told him to not keep records of his overtime. Moreover, McConnell testified that the work assignments he was given were of such a nature that the paper knew, or should have known, that McConnell would have to work overtime. If believed, McConnell's testimony would support a finding by a rational jury that defendants "employed" him overtime, within the meaning of the FLSA, without paying proper compensation.

■■■■■ Defendants also raise the doctrine of equitable estoppel, arguing that McConnell has admitted he did not report all of his hours. *Brumbelow v. Quality Mills, Inc.,* 462 F.2d 1324, 1327 (5th Cir.1972). *Brumbelow* upheld a directed verdict for the defendant on the basis that the employee's furnishing of false information to employer equitably estopped the employee from raising an FLSA claim. However, the *Brumbelow* court emphasized that its decision was a narrow one, and took pains to point out that there was no evidence from which the employer could be charged with

constructive knowledge of the overtime work. 462 F.2d at 1327. In particular, there was no evidence that the company *in any manner* encouraged workers to falsely report. *Id.* (emphasis added). Because there is evidence of this sort here, resort to the doctrine of equitable estoppel is not warranted, and plaintiff McConnell may proceed to a jury trial on his FLSA claims.